**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **KARON WASHINGTON, a minor,** | ) | |
| **by his mother and next friend,** | ) | |
| **Karisa Stewart,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 06 C 1615** |
| | ) | |
| **v.** | ) | **Magistrate Judge Morton Denlow** |
| | ) | |
| **JO ANNE B. BARNHART,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Karisa Stewart ("Plaintiff") brings this action on behalf of her son, Karon Washington ("Karon") pursuant to 42 U.S.C. § 405(g) to review a final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") denying Plaintiff's claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). The Administrative Law Judge ("ALJ") found that Karon does not meet or equal the requirements of any section of the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the listings") and is not disabled.

This matter comes before the Court on Plaintiff's motion for judgment on the pleadings and Defendant's motion for summary judgment. Plaintiff challenges the Commissioner's decision claiming that her denial of Plaintiff's request for SSI should be reversed and remanded because: (1) substantial evidence does not support the ALJ's decision that Karon has no or less than marked limitations in all six domains; (2) the ALJ did not

articulate logical grounds, based on the evidence, to support his conclusions on the issue of functional equivalence; (3) the ALJ failed to consider or discuss the evidence in light of the applicable listings; and (4) the ALJ did not factor in the testimony of Karon's mother or provide grounds for rejecting her credibility. For the reasons set forth below, this Court grants in part (issue 3) and denies in part (issues 1, 2 and 4) Plaintiff's motion for judgment on the pleadings, denies Defendant's motion for summary judgment and remands for further proceedings consistent with this opinion.

## I. FACTUAL BACKGROUND

### A.    PROCEDURAL HISTORY

Plaintiff applied for SSI disability benefits on behalf of Karon on February 13, 2003. R. 77-89. Plaintiff claims that Karon became disabled beginning January 1, 1998, due to attention deficit hyperactive disorder (ADHD), and bipolar disorder. R. 77-8. The application was denied initially and again on reconsideration. R. 53-68. A hearing was requested and conducted on May 5, 2005. R. 69-70, 313-43. The ALJ denied the claim. R. 14-27. The Appeals Council denied Karon's request for review. R. 5-8, 11, 13.

A prior claim was filed on behalf of Karon on November 2, 2000. R. 17. The claim was denied initially, on reconsideration, and in a hearing decision dated December 12, 2002. R. 36-41. On May 6, 2003, the Appeals Council denied a request for review. R. 50-2.

## B.   HEARING TESTIMONY – MAY 5, 2005

### 1.   Karon's Testimony

Karon was eight years old at the date of the hearing.  R. 322.  He was in the third grade and liked school.  R. 326.  He stayed in one classroom for school and took special classes.  R. 326-27.  Karon has lots of friends and likes playing on the swings at recess.  R. 328.  He made A's and B's in school.  R. 329.

### 2.   Plaintiff's Testimony

Plaintiff testified that Karon's illnesses are bipolar disorder and ADHD.  R. 333. Karon is hyperactive and takes Concerta, 54 milligrams once a day and (drug name inaudible) three times a day.  R. 333-34.  Despite the medication, Karon still shows impulsiveness and hyperactivity, and is easily distracted.  R. 334.  He has mood swings, chews on things, and talks in his sleep.  R. 335.

Karon's school made modifications to help him pay attention, but he was reading at a first grade level, and was about to enter fourth grade.  R. 334-35.  He was not currently in special education classes.  A hearing will be held to determine whether he will need special education classes for the next school year.  R. 336.

Karon is aggressive, hard to handle, and does not express his feelings.  R. 338.  He goes into anger phases and cries and screams for hours.  R. 338-39.  Karon and his brother argue and fight, but they have a normal sibling relationship.  R. 336.  Karon does not go out with others and when he does, he wants to be back with his mother.  R. 337.

## C.    MEDICAL EVIDENCE

### 1.    Dr. Chung K. Chen - Psychiatrist

In April 2003, Dr. Chung K. Chen, one of Karon's psychiatrists, diagnosed Karon as having ADHD and bipolar disorder.  R. 186.  He reported symptoms of aggressive/explosive behavior, sleep disturbance, psychomotor agitation, and hallucinations.  R. 186-87.  He also reported symptoms of manic syndrome that included excessive talking, inflated self-esteem, and excessive risk-taking.  R. 187.  Dr. Chen did not consider Karon's diagnosis to be causing limits to his daily functioning, except that his cognitive/communicative functioning was only fair.  *Id.*

### 2.    State Agency Physicians

Dr. Helen Appleton, a psychologist and examiner for Disability Determination Services (DDS), reviewed the evidence of record in April 2003 and concluded that Karon had less than marked limitations in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, health and physical well-being, and caring for himself, and no limitation in the area of moving about and manipulating objects. R. 188-96. Dr. Appleton further concluded that Karon's impairment or combination of impairments was severe, but did not meet, medically equal, or functionally equal the listings.  R. 190.  She made a similar conclusion in July, 2003.  R. 245-52.

In October 2003, another DDS examiner, psychologist Dr. Donald MacLean, reviewed the record and concluded that Karon's impairment or combination of impairments

was severe, but that it did not meet, medically equal, or functionally equal the listings.  R. 257.  Dr. MacLean reported less than marked limitation in acquiring and using information and interacting and relating with others; marked limitation in attending and completing tasks; and no limitation in moving and manipulating objects, caring for himself, and health and physical well-being.  R. 259-60.

### 3.    Speech and Language Pathologist

In June 2003, Sandra J. Hilger, a speech and language pathologist evaluated Karon.  R. 197-98.  She reported that Karon's articulation, receptive and expressive language, voice, and fluency were all within normal limits.  *Id.*

### 4.    DuPage County Health Department

In July and August 2004, Karon was assessed for mental health services through the DuPage County Health Department.  R. 266-91.  In August 2004, Karon's treating psychiatrist, S.J. Puszkarski, M.D., diagnosed Karon as having bipolar and attention deficit hyperactivity disorder (ADHD).  R. 263.  Dr. Puszkarski described Karon as "quite impulsive, inattentive, easily distractible, at times oppositional with a wide range of liable mood which is difficult for his mother and school environment to manage."  *Id.*  He further concluded that Karon's illness was chronic and persistent.  *Id.*  Dr. Puszkarski noted that Karon struggled with low self-esteem, mood swings from depression to aggressiveness, decreased appetite, and distorted thinking.  R. 274.  Dr. Puszkarski prescribed medication, and followed up thereafter with Karon for medication management.  R. 263-65, 292-94.  In

a follow-up visit, Dr. Puszkarski noted that Karon's mother stated that Karon was doing well in school, but after school the medication seemed to wear off.  R. 292.

### 5.    Primary Care Physician

As of July, 2004, Dr. Imelda Dawis had seen Karon a total of twenty times since 1996. R. 296.  She diagnosed him with bipolar personality and attention deficit disorder.  R. 295. She described Karon as hyperactive, unable to sit still, and unwilling to listen.  R. 296. Karon put himself into dangerous situations and needed the supervision of an adult.  R. 297. She described Karon's mood as angry.  R. 298.  She concluded that Karon exhibited mental disorders and needed medication.  R. 299.

## D.    SCHOOL RECORDS

### 1.    First Grade Teacher

In March 2003, Michelle Gember, Karon's first grade teacher, reported that Karon appeared to have an attention problem, was easily distracted and often had to be re-directed to the task at hand.  R. 125.  Karon understood and was able to follow oral direction if he was paying attention.  *Id*.  He had problems acquiring and using information.  *Id*.  She also observed problems in the area of attending to and completing tasks.  R. 126.  Karon was an average first grader when it came to socialization, interest in school, and friends.  R. 131. Although Karon was below his grade level for reading and writing, she did not believe he had a learning disability.  *Id*.  Ms. Gember determined that Karon did not have any problems

in the areas of interacting and relating with others, and moving about and manipulating objects. R. 127-28.

Shortly thereafter, Karon transferred schools and his new teacher, Naseem Ghouse, reported obvious problems in acquiring and using information, and attending and completing tasks. R. 138-39. While there were no problems or only slight problems in some areas, the teacher identified serious daily problems in focusing long enough to finish an assigned activity or task, waiting to take turns, and completing assignments. R. 139. The teacher further said that Karon was not working independently on reading and writing lessons and would complete math problems independently only after one-on-one directions are restated for him. *Id.*

### 2. Special Education Services

In June 2003, Karon was evaluated to determine his eligibility for special education services. R. 200-41. Brenda Broniec, the school psychologist, reported that Karon obtained a Verbal Scale IQ of 87 and a Performance Scale IQ of 77 that combined to form a Full Scale IQ of 80. R. 237. He possessed low average reading decoding skills, low average skill when asked to complete basic mathematics calculations, and average spelling skills. R. 238. He also performed below expectations on the written expression portion of the test. *Id.* She determined that Karon's decreased attention skills and high level of impulsivity and distractibility were consistent with his ADHD diagnosis. R. 239. She concluded that he

would likely benefit from additional strategies and support to assist his attention and on-task behavior. *Id*.

In March 2005, Karon's third grade special education teacher, LaSue Robertson, reported that Karon was performing at a first grade reading level and an early second grade math level. R. 300. Karon was able to stay on task and keep focused on tasks that were not too difficult, but he became distracted when the instruction became more difficult. *Id*. Modifications and accommodations to class instruction and assignments were needed to help Karon understand and complete assignments. *Id*. Karon has no problem getting along with his teachers and peers. *Id*. She found no medical impairments which limited his ability to function in school. R. 301.

### 3.     Third Grade Teacher

In May 2005, Karon's third grade teacher, Paul Gavras, reported that Karon did a nice job throughout the year despite various ranges of emotion and motivation. R. 304. Karon's reading level was still below third grade, but that it had improved since the beginning of the year. *Id.* He made good progress on his IEP writing objectives. Karon was able to spell words correctly using the encoding strategies he had learned, but he had difficulty applying the same strategies to his writing. R. 305. Karon was able to construct simple sentences, but needed prompting and reminders to add correct punctuation and capitalization. *Id*. He struggled with math and continued to need additional support in writing and other academic areas. R. 304-305.

### 4.     Social Worker

On June 23, 2003, Jori C. Goluba, a school social worker, noted that Karon's mother stated that she had not seen any of Karon's anger and/or mood swings since he began medication, although he continued to be easily distracted. R. 210. She concluded that Karon did not need a behavior support plan because there had been no significant behaviors impacting his academics. R. 211. She recommended close parent contact with the school in case of any medication changes. *Id.*

### 5.     School Nurse

On June 23, 2003, Penny Hyngstrom, a school nurse, examined Karon and determined he was a physically healthy boy and has no physical concerns that would impact his education. R. 225. She further opined that Karon's emotional issues of mood disorder, depression, and ADHD may impact his learning, but there were no problems reported by the teachers. *Id.*

## E.     THE ALJ'S DECISION AND APPEALS COUNCIL REVIEW

Using the three-step evaluation process[1], the ALJ determined that Karon had satisfied the requirements of step one because he had not engaged in any substantial gainful activity since the alleged onset of his disability. R. 27. At step two, the ALJ determined Karon suffered from ADHD and bipolar disorder, and these were severe impairments. *Id.* The ALJ next determined under step three that Karon did not qualify for a conclusive presumption of

---

[1] When making a child disability determination, the ALJ follows a three-step inquiry: 1) whether the child is engaged in substantial gainful activity; 2) whether the child has a severe impairment: and 3) whether the child meets or equals a listed impairment. 20 C.F.R. § 416-924.

disability because his impairments, considered singly or in combination, were not of sufficient severity to meet or equal a listing. *Id*. Thus, the ALJ went on to determine whether Karon had an impairment or combination of impairments that is "functionally equal" to the listings and satisfies the twelve-month duration requirement. R. 19.

In his determination of functional equivalence, the ALJ examined the entire record for evidence of Karon's performance within the six domains of functioning. R. 24-6. He found that Karon did not have "extreme" limitation in any domain; had a less than "marked" limitation in the areas of acquiring and using information, attending and completing tasks, interacting and relating with others, caring for himself, and health and physical well-being; and had no limitation in the area of moving about and manipulating objects. *Id*. The ALJ determined that Karon did not functionally equal the severity of the listings. R. 24-7. The ALJ concluded Karon was not under a "disability" at any time from the alleged onset date through the date of his decision. R. 27.

Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council. R. 5-7.

## II. LEGAL STANDARDS

### A.    CHILD DISABILITY STANDARD

When making a child disability determination, the ALJ must utilize the following procedural inquiry: 1) whether the child is engaged in substantial gainful activity; 2) whether the child has a severe impairment; and 3) whether the child meets or equals a listed

impairment. 20 C.F.R. § 416-924. Under step three in a child's SSI claim, where the child is not working and has a severe impairment, the ALJ must consider whether the child's impairments meet, medically equal, or functionally equal the listings. 20 C.F.R. §416.924(a). The listings describe, for each of the major body systems, impairments which are considered severe enough *per se* to prevent a person from doing any significant gainful activity. 20 C.F.R. § 404.1525(a). If the child is not engaged in substantial gainful activity, and has a severe impairment, but the impairment does not meet or equal a listed impairment, the ALJ must assess the child's functional abilities, together with other relevant evidence, to determine whether the child is disabled. 20 C.F.R. § 416.924a.

In determining functional equivalence, the ALJ must examine the evidence of record and determine a child's level of functioning in "six domains." 20 C.F.R. § 416.926a(b)(1). The six domains include: acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; caring for oneself; and health and physical well-being. 20 C.F.R. § 416.926a(b)(1). If a child has "marked" limitations in two of the domains or an "extreme" limitation in one domain, then his impairments will functionally equal the Listings, and he will be found disabled. 20 C.F.R. § 416.926a(a).

A "marked" limitation is "more than moderate and less than extreme," and can arise due to a limitation or combination of limitations that "interfere seriously with the child's functioning." 20 C.F.R. § 416.92a(c)(3)(i)(C)(2000). An "extreme" limitation occurs when

there is "no meaningful functioning in a given area." 20 C.F.R. § 416.92a(c)(3)(ii)(C)(2000).

When evaluating the child's functional factors, the ALJ must "consider all evidence from medical and nonmedical sources -- such as . . . parents, teachers, and other people that know [the claimant] that can help [the Commissioner] understand how [the claimant's] impairment(s) affects [his/her] ability to function." 20 C.F.R. § 416.924d. The regulations also provide that school attendance and school records shall be considered. 20 C.F.P. § 416.924d(g).

## B.    STANDARD OF REVIEW

Judicial review of the ALJ's decision is governed by 42 U.S.C. § 405(g), which provides that "the findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §§ 405(g), 1383(c)(3). Judicial review is limited to determining whether the ALJ applied the correct legal standards in reaching a decision and whether there is substantial evidence in the record to support the findings. 42 U.S.C. §§ 405(g), 1383(c)(3), *Delgado v. Bowen,* 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales,* 402 U.S. at 401. To determine if substantial evidence exists, we review the record as a whole but do not substitute our judgment for that of the ALJ. *Id.*

The court must affirm the ALJ's decision if his findings and inferences reasonably drawn from the record are supported by substantial evidence, even though some evidence may also support the claimant's claim. 42 U.S.C. § 405(g): *Walker v. Bowen,* 834 F.2d 635,

639-40, 642 (7th Cir. 1987). The ALJ "need not provide a complete written evaluation of every piece of testimony and evidence." *Nelson v. Apfel*, 131 F.3d 1228 (7th Cir. 1997) (citing *Diaz v. Charter*, 55 F.3d 300, 308 (7th Cir. 1995)). If the court can "track the ALJ's reasoning regarding the evidence, [and is] certain [the ALJ] considered the important evidence . . . [the court can] find the decision meets the minimum articulation standard." *Id.*

A reviewing court may not decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *Ehrhart v. Secretary of Health and Human Services,* 969 F.2d 534, 538 (7th Cir. 1992). "In administrative as in judicial proceedings, errors if harmless do not require (indeed permit) the reviewing court to upset the agency's decision." *Sanchez v. Barnhart*, 467 F.3d 1081 (7th Cir. 2006). Finally, a credibility determination made by the ALJ will not be disturbed unless it is patently wrong. *Brewer v. Chater*, 103 F.3d 1384, 1392 (7th Cir. 1997).

### III. DISCUSSION

Plaintiff raises four issues for judicial review: (1) whether substantial evidence supports the ALJ's decision that Karon has no or less than marked limitations in all six domains; (2) whether the ALJ failed to articulate logical grounds based on the evidence to support his conclusion that Karon's impairments were not functionally equal to those of a listed impairment; (3) whether the ALJ failed to consider or discuss the evidence in light of the applicable listings; and (4) whether the ALJ failed to factor in Plaintiff's testimony or provide grounds for rejecting her credibility.

## A.    SUBSTANTIAL EVIDENCE

Plaintiff argues that substantial evidence does not support the ALJ's decision that Karon has no or less than marked limitation in the domains of acquiring and using information, and attending to and completing tasks.[2]  Specifically, Plaintiff argues that ample evidence was presented that Karon had difficulty attending to and completing tasks, as well as performing below grade level in significant areas such as reading, writing, and math. Plaintiff claims there is at least a marked limitation in each of these domains, if not an extreme limitation in the domain of attending to and completing tasks.

The Court finds substantial evidence to support the ALJ's finding that Karon has less than marked limitation in the areas of acquiring and using information, and attending to and completing tasks.  Substantial evidence is evidence that is sufficient for a reasonable person to accept as adequate to support the decision.  *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003).  To determine if substantial evidence exists, the court reviews the record as a whole, but the court cannot substitute its judgment for the ALJ's judgment by reweighing facts or witness credibility.  *Id.*

---

[2] The parties do not contest the ALJ's finding that Karon has less than marked limitations in the areas of interacting and relating with others, caring for himself, and health and physical well-being or no limitation in the area of moving about and manipulating objects.

### 1.     Acquiring and Using Information

The record contains substantial evidence that Karon has less than marked limitation in the domain of acquiring and using information.  The Individualized Education Program (IEP) report noted that, although Karon needed some academic support, he did not need a self-contained instructional program, alternative education program, or supported placement in a general education classroom.  R. 217.  In addition, Karon did not qualify for special education reading services.  R. 219.

Brenda Broniec, a school psychologist who tested Karon as part of the special education evaluation, opined that, although Karon demonstrated a high level of impulsivity and distractibility, Karon did not seem to have any significant behavioral issues in an educational setting.  R. 239.  According to Karon's special education teacher, Ms. Roberts, Karon's reading and math skills were below grade level, but he was able to stay on task and keep focused on easy tasks.  R. 300.  She did not notice any specific behavior concerns in the classroom.  *Id*.

Paul Graves, Karon's third grade teacher, found Karon had made good progress in his IEP writing goals and objectives for the school year.  R. 304.  Karon's demeanor had improved from the start of the year, but he definitely needed motivation at times.  *Id*.  Penny Hyngstrom, the school nurse, wrote that Karon was a physically healthy boy and had no physical concerns that would impact his education.  R. 225.  She further noted that, although Karon's emotional issues may impact his learning, there had been no problems reported by

the teachers relating to his staying on task. R. 226. Jori C. Goluba, a school social worker, noted no significant behaviors impacting his education. R. 211.

Psychologist Dr. Helen Appleton reviewed the evidence of record in April, 2003 and July, 2003 and concluded that Karon exhibited less than marked limitations in the domains of acquiring and using information. R. 188-96, 243-52. Dr. Donald MacLean, another examiner for DDS, also concluded Karon had less than marked limitation in acquiring and using information. R. 259-60. This Court finds that substantial evidence supports the ALJ's conclusion that Karon's limitation in the domain of acquiring and using information is less than marked.

## 2. Attending to and Completing Tasks

The record also contains substantial evidence that Karon has less than marked limitation in attending to and completing tasks. Dr. S.J. Puszkarski, a psychiatrist with the DuPage County Health Department, observed that although Karon was fidgety and hyperactive, he seemed logical and goal-directed. R. 265. Dr. Puszkarski opined that insight and judgment were poor, but that Karon was alert and oriented in all spheres age appropriate. *Id*. Although, Dr. Chen noted that Karon had excessive talkativeness, risk-taking, psychomotor agitation, and was easily distracted by extraneous stimuli, he did not consider Karon's diagnosis to be causing limits to his daily functioning except for that of his cognitive/communicative functioning. R. 187.

Sandra J. Hilger, a speech and language pathologist, opined that Karon was within normal limits in all areas tested including, articulation, receptive language, expressive language, voice and fluency. R. 198. School psychologist Brenda Broniec's observations of Karon indicated a high level of impulsivity and distractibility consistent with ADHD, but she opined there did not seem to be any significant behavioral issues in the educational setting. R. 239.

Karon's special education teacher, Ms. Roberts, noted that although modifications and/or accommodations to class instruction and assignment were needed, Karon was able to stay on task and keep focused on tasks that were not too difficult for him. R. 300. She furthered added that she did not notice any specific behavior concerns in the classroom. *Id.*

Dr. Appleton, the DDS examiner, found that Karon had less than marked limitation in the area of attending to and completing tasks, and she concluded the same result when she examined Karon a few months later. R. 188-96, 243-52. Dr. MacLean, another DDS examiner, however, found that Karon had a marked limitation in attending to and completing tasks. R. 259-60. But overall, Dr. MacLean concluded that although Karon's impairment or combination of impairments was severe, it did not meet, medically equal, or functionally equal the listings. R. 257.

Although there is some contrary evidence, this Court finds that the ALJ's conclusion that Karon has a less than marked limitation in the domain of attending to and completing tasks is supported by substantial evidence.

**B.      FAILURE TO ARTICULATE LOGICAL GROUNDS**

Plaintiff asserts that the ALJ erroneously failed to articulate logical grounds based on the evidence to support his conclusion that Karon's impairments are not functionally equal to those of a listed impairment.  Specifically, Plaintiff cites objections to the ALJ's conclusions regarding the domains of acquiring and using information, and attending to and completing tasks.

"An ALJ must consider all relevant evidence and may not select and discuss only the evidence that favors his ultimate conclusion." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).  In addition to relying on substantial evidence, an ALJ must minimally articulate his analysis at some level.  *Young v. Sec'y of Health and Human Servs.*, 957 F.2d 386, 393 (7th Cir. 1992).  The ALJ must also build "an accurate and logical bridge" from the evidence to his conclusion.  *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).  Errors, if harmless, do not require or permit a reviewing court to upset the agency's decision.  *Sanchez v. Barnhart*, 467 F.3d 1081 (7th Cir. 2006).

**1.      Acquiring and Using Information**

Under the domain of acquiring and using information, the ALJ concluded that Karon has less than marked limitations.  R. 24.  In his evaluation of the evidence, the ALJ discussed the fact that Karon is easily distracted and often has to be re-directed to the task at hand.  *Id*. The ALJ also talked about Karon's apparent attention problem and the fact that Karon is in regular classes, although he receives reading support and attends some special education

classes.  *Id.*

In his opinion, the ALJ discussed each of the six domains of functioning, identified some evidence relevant to those domains, and then stated the extent, if any, of Karon's limitations.  The ALJ discussed not only evidence favorable to his ultimate conclusion, but evidence that also weighed against his finding.  Although the ALJ's discussion of the relevant evidence under the domain of acquiring and using information is brief, his overall evaluation of the evidence is extremely thorough.

Because this Court can track the ALJ's reasoning regarding the evidence and is certain that the ALJ considered all evidence that is important, this Court finds the ALJ's decision meets the minimum articulation standard.

### 2.     Attending to and Completing Tasks

In the domain of attending to and completing tasks, the ALJ concluded that Karon has less than marked limitation.  R. 25.  The ALJ noted that Karon is easily distracted, and has difficulty focusing on a task and working at a reasonable pace.  *Id.*  The ALJ also discussed the speech language pathologist's findings that during an evaluation, Karon's effort and attention were good, and another teacher's opinion that Karon was able to stay on task and keep focused on things that were not too difficult.  R. 24.

Although the ALJ's discussion of the relevant evidence under this domain of functioning is brief, his overall evaluation of the evidence is extremely thorough.  In his evaluation of the evidence and rationale, the ALJ discussed the findings of Karon's

physicians, psychologists, teachers, speech and language pathologists, school nurse, social worker, and two DDS examiners. The ALJ also evaluated Karon's IQ tests and his Individualized Education Program Summary.

This Court can track the ALJ's reasoning regarding the evidence and it is clear that the ALJ considered all important evidence. Therefore, this Court finds the ALJ's decision meets the minimum articulation standard.

## C.    FAILURE TO DISCUSS THE APPLICABLE LISTINGS

Plaintiff argues that the ALJ failed to consider or discuss the evidence in light of the applicable listings. Specifically, Plaintiff faults the ALJ for not articulating his analysis of the evidence under Section 112.04 or 112.11 of the Listing of Impairments for attention deficit hyperactive disorder, and bipolar disorder. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§112.04, 112.11.

The Seventh Circuit holds that failure to discuss evidence in light of an applicable listing leaves the court with "grave reservations as to whether [the ALJ's] factual assessment addressed adequately the criteria of the listings." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002) (citing *Cf. Burnett v. Comm'r*, 220 F.3d 112, 119 (3rd Cir. 2000). Likewise, we find that the ALJ's statements in this case constitute insufficient articulation to show that he considered whether Karon's impairments met or equaled Section 112.04 or 112.11 of the Listing of Impairments for attention deficit hyperactive disorder, and bipolar disorder and remand is warranted. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§112.04, 112.11.

In his determination, the ALJ concluded that the evidence failed to establish that Karon's impairments met or medically equaled a listed impairment. R. 23. In his discussion, however, the ALJ gave no explanation as to how he arrived at that finding. In addition, the ALJ failed to discuss the specific listings. He simply concluded, "the child's "severe" impairments do not meet or medically equal the severity of any impairment listed in Part B, or Part A, of Appendix 1 to Subpart P of part 404 of Chapter 20 of the Code of Federal Regulations, 20 CFR §§416.924(d)(1), 416.925 and 416.926. R. 27.

This Court notes that Listing 112.04 and 112.11 provide a list of factors that a claimant must prove in order to establish that he or she is disabled for the purposes of SSI benefits. Specifically, 112.04 and 112.11 are divided into two categories A and B.

Under listing 112.04, the factors include: depressed or irritable mood; markedly diminished interest in pleasure in almost all activities; appetite or weight increase or decrease, or failure to make expected weight gains; sleep disturbance; psychomotor agitation or retardation; fatigue or loss of energy; feelings of worthlessness or guilt; difficulty thinking or concentrating; suicidal thoughts or acts and; hallucinations, delusions, or paranoid thinking. Under listing 112.11, the factors are: marked inattention; marked impulsiveness; and marked hyperactivity.

In his opinion, the ALJ stated "the child's 'severe' impairments do not meet or medically equal the severity of any impairment listed." R. 27. However, the ALJ failed to discuss the medical evidence in relation to the requirements of the listings.

Dr. Chen, Karon's psychiatrist, diagnosed Karon as having ADHD and bipolar disorder. R. 186. He reported symptoms of aggressive/explosive behavior, sleep disturbance, psychomotor agitation, and hallucinations. R. 186-87. He also reported symptoms of manic syndrome that included excessive talkativeness, inflated self esteem, and excessive risk-taking. R. 187.

Karon's treating psychiatrist, S.J. Puszkarski, M.D., diagnosed Karon as having bipolar and ADHD. R. 263. Dr. Puszkarski described Karon as "quite impulsive, inattentive, easily distractible, at times oppositional with a wide range of liable mood which is difficult for his mother and school environment to manage." *Id*. He further concluded that Karon's illness was chronic and persistent. *Id*. Dr. Puszkarski noted that Karon struggled with low self-esteem, mood swings from depression to aggressiveness, decreased appetite, and distorted thinking. R. 274.

Dr. Imelda Dawis, Karon's primary care physician, diagnosed him with bipolar personality and attention deficit disorder. R. 295. She described Karon as hyperactive, unable to sit still, and unwilling to listen. R. 296. Dr. Dawis further reported that Karon put himself in dangerous situations and needed the supervision of an adult. R. 297. She described Karon's mood as angry and that he reported seeing dead people. R. 298. She concluded that Karon exhibited mental disorders and needed medication. R. 299.

Without meaningful analysis from the ALJ regarding this medical evidence and its application to the listings, this Court is unable to perform any meaningful judicial review.

Proper resolution of this case requires the ALJ to consider the medical evidence and articulate specific grounds for accepting it or rejecting it under the applicable listing. Therefore, this case is remanded for further proceedings.

## D.      CREDIBILITY DETERMINATION OF PLAINTIFF'S TESTIMONY

Plaintiff asserts that the ALJ did not factor in the testimony of Karon's mother from the administrative hearing or provide grounds for rejecting her credibility. An ALJ's credibility determination is entitled to special deference, and is upheld unless "patently wrong." *E.g. Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006). The ALJ's discretion is not unlimited, however, and the ALJ must undertake a thorough examination and explanation when making credibility determinations. In evaluating a claimant's credibility, the ALJ must comply with SSR 96-7p. *Lopez v. Barnhart*, 336 F.3d 535, 539-40 (7th Cir. 2003); *Brindisi v. Barnhart*, 315 F.3d 783, 787 (7th Cir. 2003). SSR 96-97 provides, in pertinent part:

> In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence. (SSR 96-7p.)

This Court finds that the ALJ considered the direct testimony from the hearing and in considering it, weighed it against the evidence found in the record. The evidence of record establishes findings contradictory to Plaintiff's testimony.

Specifically, Karon's special education teacher, Ms. Roberts, stated that Karon was in third grade and although his reading and math skills below grade level, Karon was able to stay on task and keep focused on tasks that were not too difficult. R. 300. She further added that she did not notice any specific behavior concerns in the classroom nor had Karon ever been suspended or had any discipline actions. *Id.* In addition, the IEP report concluded that Karon did not qualify for special education reading services. R. 219. The report further concluded that Karon did not need a self-contained instructional program because it would be too restrictive for him. R. 217.

Thus, although Plaintiff testified to Karon's educational development problems, Karon's educational instructors felt his limitations did not rise to the level to require him to be held back in school or placed in a special program. They further felt that Karon did not exhibit any behavioral problems in the classroom setting. Moreover, Jori C. Goluba, a school social worker, stated that Plaintiff said she had not seen any of Karon's anger and/or mood swings since he was put on medication in March of 2003. R. 210. Ms. Goluba further noted that Karon had not had any significant behaviors impacting his academics. R. 211. This Court finds the ALJ's credibility determination contains evidentiary support.

## IV. CONCLUSION

The ALJ's decision is thorough and is supported by substantial evidence in all respects except that the ALJ failed to discuss the evidence in light of the applicable listings. **Plaintiff's motion for judgment on the pleadings is granted in part and denied in part. Defendant's motion for summary judgment is denied. This case is remanded for determination of Karon's ADHD and bipolar disorder in light of the listings for these two conditions.**

**SO ORDERED THIS 29th DAY OF MARCH, 2007.**

_____
**MORTON DENLOW**
**United States Magistrate Judge**

**Copies mailed to:**

M. Jacqueline Walther
Kielian & Walther
33 West Jackson Boulevard
Suite 201
Chicago, IL 60604

Counsel for Plaintiff


Ann L. Wallace
United States Attorney's Office (NDIL)
219 South Dearborn Street
Suite 500
Chicago, IL 60604

Edward P. Studzinski
Assistant Regional Counsel
Social Security Administration
200 West Adams Street, Suite 3000
Chicago, IL 60606

Counsel for Defendant